UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN BRYANT,

                Petitioner,                      Case Number 16-10116
                                                        Honorable David M. Lawson

v.

RANDALL HAAS,

                Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Shawn Bryant filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for narcotics and firearms offenses following a jury trial in the Oakland County, Michigan circuit court. He alleges that he should have been given a new trial when evidence emerged after trial that one of the police officer witnesses had lied in another case, he was denied the effective assistance of trial counsel, he was denied a fair trial because of prosecutorial misconduct, he was denied his right to present a defense, he was denied his right to a speedy trial, and his right to confront a witness was violated when hearsay evidence was allowed. Because the state courts' decisions on these issues did not contravene or unreasonably apply federal law as determined by the Supreme Court, the Court will deny the petitioner.

I.

The Michigan Court of Appeals summarized the facts of the case in its opinion on direct appeal as follows:

> The facts leading to the convictions arose out of a raid conducted on October 29, 2009, at about 7:30 p.m., when the Oakland County Narcotics Enforcement Team (Team) executed a search warrant for apartments 13 and 21 at Maynard Court in Pontiac. Defendant was the target of the investigation that resulted in the warrants

because on that day, and the day prior, Detective Marc Ferguson saw defendant at apartment 13 and the Team conducted two controlled buys from defendant.

About a minute or two before, the rest of the Team entered the front door of apartment 13, Officer Jeff Fletemier and Sergeant Brent Miles went to the back of the apartment building to watch the rear exterior of apartment 13. The back of apartment 13 had a shared balcony with apartment 15 next door. Below the balcony were a concrete patio and a grassy yard. The balcony had a three to four foot high dividing wall that separated apartment 13's side of the balcony from apartment 15's side of the balcony. Officer Fletemier and Sergeant Miles looked around the area before they decided the best position to watch the back door leading out of apartment 13 onto the balcony. At this time, they did not see any contraband on the patio or in the yard. Officer Fletemier was standing in the yard about 10 feet from the balcony while Sergeant Miles was standing about five feet away from the balcony.

While the rest of the team was entering apartment 13 through the open front door, Officer Fletemier and Sergeant Miles saw defendant open apartment 13's back door. Defendant stepped outside onto the balcony. The lights were on in the apartment and Officer Fletemier had his flashlight focused on the back door. Officer Fletemier and Sergeant Miles both shouted for defendant to stop and put up his hands. Instead, defendant raised his right arm and tossed a gun over the side balcony wall to the concrete patio below. In particular, although Officer Fletemier could not identify the object that defendant threw as a gun at the time defendant threw it, he did describe it as a "silver object" that made "a loud metal noise" when it hit the concrete patio. Sergeant Miles identified the object thrown as a gun; however, he could not identify defendant as the person on the balcony.

Defendant subsequently tossed two packages of heroin, and then ducked down beneath the balcony wall. The officers lost sight of defendant for a bit, but then saw defendant roll or jump over the dividing wall onto apartment 15's side of the balcony. Defendant popped his head up over the balcony wall several times.

Officer Fletemier and Sergeant Miles called Detective Ferguson to inform him about defendant's presence on the balcony. Detective Ferguson and Sergeant Giolitti came from the inside of the apartment to the balcony, hopped over the dividing wall, and arrested defendant on apartment 15's side of the balcony. Detective Ferguson found $3,600 in defendant's pocket. Officer Fletemier and Sergeant Miles then searched the area below the balcony and discovered a .45 caliber, loaded silver handgun. Within a couple of feet of the gun the officers located a broken open bag with a chunk of heroin in it and, in the yard just off the patio another chunk of heroin. With the help of several other officers, Sergeant Miles and Detective Ferguson searched apartment 13. In the living room, the officers found about nine grams of heroin, three grams of marijuana, a digital scale,

three cell phones (one of which defendant allegedly identified as his own cell phone), several pictures of defendant, and defendant's car keys on a table. On the kitchen table there was approximately 47 grams of crack cocaine, 21 grams of heroin, 70 grams of powder cocaine, seven grams of marijuana, a digital scale, cutting agents, packaging materials, cash, and four cell phones.

*People v. Bryant*, Nos. 306602, 318675, 2014 WL 4214849, at *1–3 (Mich. Ct. App. Aug. 26, 2014).

The jury convicted Bryant of two counts of possession with the intent to deliver over 50 grams of narcotics (one count for heroin, and one count for cocaine), Mich. Comp. Laws § 333.7401(2)(a)(iii), and two counts of possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. Following the jury trial, the petitioner pleaded guilty to another count of felony-firearm and to a count of felon in possession of a firearm, Mich. Comp. Laws § 750.224f. He was sentenced as an habitual offender to concurrent prison terms totaling 15 to 30 years, plus consecutive two-year terms for the felony-firearm convictions. The trial court thereafter denied his subsequent motion to dismiss on the ground that his right to a speedy trial was violated.

After the petitioner filed his claim of appeal, he moved in the court of appeals to remand the case so he could file a motion for a new trial. He had discovered evidence that Mark Ferguson, one of the police witnesses who testified at trial, had filed a false affidavit in another case. The court of appeals granted the motion. The petitioner was allowed to develop the issue in the trial court, which found that Ferguson's earlier lies under oath were newly discovered and material. The court granted a new trial. However, the court of appeals, which had retained jurisdiction after the remand, reversed the new trial order and affirmed the convictions. *Ibid.* One judge dissented.

The Michigan Supreme Court denied leave to appeal. *People v. Bryant,* 497 Mich. 1041, 864 N.W.2d 142 (2015), *reconsideration den.* 498 Mich. 876, 868 N.W.2d 617 (2015).

The petitioner filed a timely petition for a writ of habeas corpus alleging the following grounds:

> I. The Michigan appellate courts unreasonably reversed the circuit court ruling granting a new trial based on newly discovered evidence that had been withheld from the defense by the prosecution.
>
> II. Petitioner was prejudiced by ineffective assistance of counsel for failing to make any argument about sentencing at the sentencing proceeding.
>
> III. Petitioner was prejudiced by prosecutor misconduct in, over objection, raising to the jury the Casey Anthony case.
>
> IV. Petitioner was prejudiced by prosecutor argument that directly undercut the judge's instructions on proof beyond a reasonable doubt.
>
> V. Petitioner was prejudiced by the court's action in allowing prosecution investigators, but not the defense investigator, to review notes during testimony.
>
> VI. Petitioner was prejudiced by undue delay in bringing him to trial resulting in the loss of a key defense witness, and by the denial of a motion to adjourn to make up for the prejudice.
>
> VII. Petitioner was prejudiced by testimony over objection by an officer about what other officers had seen, violating the right of confrontation.
>
> VIII. Petitioner was prejudiced by ineffective assistance of counsel for various additional deficiencies relating to witness questioning, changes in witness answers, and failures to object.
>
> IX. Petitioner was prejudiced by ineffective assistance of counsel relating to his guilty pleas to two counts.

Pet. at 4-14.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]"

the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

## A.

The petitioner first argues that the state court of appeals erred by reversing the trial judge's grant of a new trial based on newly discovered evidence. After the trial, the petitioner's appellate lawyer learned that police officer Mark Ferguson, who testified against the petitioner, lied in an affidavit filed in support of a request for a search warrant in an unrelated case in the Oakland County court in June of 2011. Ferguson swore in a search warrant affidavit that he had not opened a container containing narcotics before seeking the search warrant, when in fact he had. The petitioner discovered this evidence from a Detroit Free Press article dated January 29, 2013, in which the Oakland County Prosecutor stated that she learned the prior September that Ferguson, who since had been fired from the Oakland County Sheriff's Department, had given false information to obtain a search warrant in the case of *People v. Payan*. As a result of this information, the charges were dismissed against Mr. Payan in his case.

This information came to light that prior September when the assistant prosecutor in the *Pagan* case discovered that the statement in the affidavit was false after interviewing witnesses for the case. The assistant prosecutor notified the Oakland County Prosecutor. The prosecutor's office then reviewed 100 pending drug cases in involving Ferguson and had dismissed fifteen of those cases in which he was central to the investigation.

The Michigan Court of Appeals overturned the trial court's grant of a new trial, because it did not believe that the new evidence undermining Ferguson's credibility would cause a different result probable on retrial. It reached that conclusion reasoning that "the prosecution's case was supported by other witnesses." *People v. Bryant*, 2014 WL 4214849, at *12.

There is no recognized federal constitutional claim that allows relief for the denial of a motion for new trial, even when the motion is based on newly-discovered evidence, and even with coupled with a claim of actual innocence, at least in non-capital cases. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *See also Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).

In this case, the petitioner coupled his denial-of-new-trial claim with an allegation that the prosecution withheld evidence that Detective Ferguson had falsified search warrant affidavits, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The warden contends that the petitioner did not exhaust a *Brady* claim in the state courts, but he is incorrect. The petitioner plainly mentioned *Brady v. Maryland* in his appellate briefs filed in both Michigan appellate courts and presented the issue for decision.

It is well established that "'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Wearry v. Cain*, --- U.S. ---, 136 S. Ct. 1002, 1006 (2016) (quoting *Brady*, 373 U.S. at 87). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

There cannot be any doubt that the evidence of Ferguson's past lies in the line of duty would have been favorable to the petitioner. "[T]he rule stated in *Brady* applies to evidence undermining witness credibility." *Wearry*, 136 S. Ct. at 1006 (citing *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)). And the evidence was material, as it could have affected the jury's judgment of Ferguson's credibility. "Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." *Ibid.* (quoting *Giglio*, 405 U.S. at 154) (quotation marks omitted).

There is no suggestion that the Oakland County Prosecutor actively suppressed the evidence of police officer Ferguson's past prevarications. Nonetheless, "the . . . prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995). "But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Ibid.* (citation omitted). "[T]he *Brady* duty extends to impeachment evidence as well as exculpatory evidence, and *Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'" *Youngblood v. W. Virginia*, 547 U.S. 867, 869-70 (2006) (quoting *Kyles*, 514 U.S. at 438).

Detective Ferguson certainly knew about his own past misconduct, which consisted of swearing to a false search warrant affidavit. "Whether or not the attorney for the [prosecution] knew of that information, a *Brady* violation still occurs where the police know information that should have been disclosed but fail or refuse to inform the prosecutor." *United States v. McClellon*,

-8-

260 F. Supp. 3d 880, 884–85 (E.D. Mich. 2017) (citing *Youngblood*, 547 U.S. at 869-70); *see also*

*LeBere v. Trani*, 746 F. App'x 727, 732 (10th Cir. 2018) ("We conclude that the evidence allegedly

not disclosed — that [Officer] Walker induced [a jailhouse informant] to concoct a false confession

[purportedly made by the petitioner] by providing him details about the crime — is material

regardless of the subsequent perjury [by the informant].").

The Michigan Court of Appeals concluded that the petitioner was not prejudiced by the

nondisclosure because "the prosecution's case was supported by other witnesses" than Ferguson.

*People v. Bryant*, 2014 WL 4214849, at *12.  The court reasoned:

> [T]he trial testimony of Officer Fletemier and Sergeant Miles supported
> defendant's convictions.  Their combined testimony established that defendant
> exited apartment 13, threw the gun and heroin over the balcony, and went over the
> wall to the balcony of apartment 15, as well as the weight of the heroin and cocaine
> found inside and outside the apartment.  Defendant argues that the fact that the
> officers in the other case covered up for Detective Ferguson could lead the jury to
> disbelieve the other officers in this case.  However, there is no evidence that other
> officers lied or covered for Detective Ferguson in the other case, or that any others
> did so in this case.  Accordingly, the impeachment evidence regarding Detective
> Ferguson would not reasonably lead the trier of fact to disbelieve Officer Fletemier
> or Sergeant Miles in this case.

*Ibid.*

That reasoning did not amount to a contravention or misapplication of federal law.  It is

true that, "[t]o prevail on his *Brady* claim, [the petitioner] need not show that he 'more likely than

not' would have been acquitted had the new evidence been admitted."  *Wearry*, 136 S. Ct. at 1006

(quoting *Smith v. Cain*, 565 U.S. 73, 74-76 (2012)).  "He must show only that the new evidence is

sufficient to 'undermine confidence' in the verdict."  *Ibid.*  However, in the habeas context, a

petitioner must demonstrate prejudice.  *O'Hara v. Brigano*, 499 F.3d 492, 502-03 (6th Cir. 2007).

"Prejudice means that the 'nondisclosure was so serious that there is a reasonable probability that

the suppressed evidence would have produced a different verdict.'" *United States v. Castano*, 906 F.3d 458, 466 (6th Cir. 2018) (quoting *Strickler*, 527 U.S. at 281). 263, 281-82 (1999). Prejudice might not result from the nondisclosure "if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith,* 565 U.S. at 76 (citing *United States v. Agurs*, 427 U.S. 97, 112-13 & n.21 (1976)). And the state appellate court decided exactly that.

Ferguson was not the only witness against the petitioner. As noted, Officer Fletemier and Sergeant Miles both testified to seeing the petitioner throw the gun and drugs off the porch of Apartment 13. One might disagree whether the evidence that would impeach Ferguson probably would have caused a different result on retrial, as did the dissenting judge in the court of appeals. *See Bryant*, 2014 WL 4214849, at *14 (Jansen, J., dissenting). But the court's decision was not "so lacking in justification" so as to put it "beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103. Ferguson's testimony "was not the central piece of evidence holding together an otherwise feeble case, but was merely one piece of a cumulative evidentiary puzzle." *Beuke v. Houk,* 537 F.3d 618, 636 (6th Cir. 2008).

The denial of the motion for new trial based on the discovery of evidence of Ferguson's past false statements will not support the issuance of a writ of habeas corpus.

B.

The petitioner alleges in his second, eighth, and ninth claims that he was denied the effective assistance of counsel for a variety of reasons, including the failure to make certain arguments at sentencing, decisions about witness questioning, failures to object, and advice on the post-trial guilty pleas.

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White v. Woodall*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). The standard is "all the more difficult" on habeas corpus review because, when AEDPA deference applies, "[t]he standards created by *Strickland* and §

2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Ibid*.

1.

The petitioner's first criticism is that his trial attorney did not did not make any argument at the sentencing hearing to mitigate his sentencing. The Supreme Court has held that a criminal defendant has the right to effective assistance of counsel at the sentencing phase of both capital and not-capital criminal cases. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Ibid.* (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

The Michigan Court of Appeals rejected this claim on direct appeal, finding no deficient performance by trial counsel.

> Contrary to defendant's assertion, defense counsel did argue for a lenient sentence on behalf of defendant. Indeed, defense counsel submitted to the trial court a sentencing memorandum (and several letters) that mentioned defendant's education, service to the community, and support of his wife and three children.

*Bryant*, 2014 WL 4214849, at * 4, n. 8.

That holding reasonably interprets the record, and it is consistent with governing federal law. The sentencing memorandum submitted by the petitioner's counsel included an argument for the trial judge to depart below the minimum sentencing guidelines based on the petitioner's employment and education history, service to the community, support of his wife and three

children, and the weakness of the case against the petitioner. Trial counsel's method of requesting a downward departure from the guidelines fell within the wide range of reasonable professional assistance and therefore did not constitute deficient performance in support of an ineffective assistance claim. *See*, *e.g.*, *Harrington v. United States*, 489 F. App'x. 50, 55 & n.1 (6th Cir. 2012). The petitioner is not entitled to relief on his second claim.

2.

In claim number eight, the petitioner lists instances during trial that he believes amount to deficient performance. To begin, the petitioner argues that defense counsel should have objected more than once to Officer Fletemeir's testimony that he believed that the item he saw discarded by the petitioner was a bag of narcotics and to Sergeant Miles' testimony that he believed that he saw the petitioner discarding drugs.

The Michigan Court of Appeals rejected the petitioner's claim, finding that there was sufficient evidence introduced to establish that these witnesses had personal knowledge of the event, which is all that is required under state Evidence Rule 602:

> There was sufficient evidence showing that Officer Fletemier and Sergeant Miles had personal knowledge of the events that occurred on the balcony. Officer Fletemier and Sergeant Miles were both present and watched defendant walk out of apartment 13 onto the balcony during the search. Officer Fletemier saw defendant toss a silver item over the balcony, and it made a metallic sound upon hitting the cement patio. Sergeant Miles identified this object as a gun. Later, Officer Fletemier and Sergeant Miles recovered a gun from the patio area. Similarly, Sergeant Miles saw the man on the balcony toss several items over the edge. Later, Sergeant Miles and Officer Fletemier recovered two chunks of heroin from the patio. Sergeant Miles saw and positively identified defendant after he was arrested on the balcony. Any further objection by defense counsel would likely have been futile and, therefore, unnecessary.

*Bryant*, 2014 WL 4214849, at * 3 (citation and footnote omitted).

That decision does not misapply *Strickland*. The petitioner does not challenge the state court's evidentiary holding. Nor could he; federal courts adjudicating habeas petitions under section 2254 "defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). It is a small step beyond that to conclude that the state court's holding that counsel's performance was reasonable was itself a reasonable application of federal law. *See Harrington*, 562 U.S. at 105 ("Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."). The failure to object to relevant and admissible evidence does not amount to deficient performance. *Alder v. Burt*, 240 F. Supp. 2d 651, 673 (E.D. Mich. 2003).

The petitioner next contends that trial counsel should have objected to Sergeant Miles' testimony that he found a card at the location addressed to "gangster Bryant" because this evidence was prejudicial and admitted solely to show the petitioner's propensity to commit the charged crime, in violation of Michigan Rule of Evidence 404(b). The Michigan Court of Appeals rejected the claim, finding that "the prosecution likely offered Sergeant Miles's testimony about a card addressed to 'gangster Bryant' to show that the car keys found in apartment 13 belonged to defendant, not to show propensity. Therefore, the trial court would have likely overruled any objection defense counsel raised on this ground." *Bryant*, 2014 WL 4214849, at * 4.

Habeas relief on this claim is not warranted for the same reason: the state court's determination that counsel performed reasonably is itself a reasonable application of *Strickland*. *Harrington*, 562 U.S. at 105.

The petitioner next contends that counsel was ineffective for failing to object to the prosecutorial misconduct he alleges in his fourth claim, discussed below.

To establish prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for his trial attorney's failure to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). For reasons set out below, the prosecutor's argument did not deprive the petitioner of a fundamentally fair trial. The petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006).

The petitioner next contends that trial counsel was ineffective by failing to object on confrontation grounds to the admission of Detective Ferguson's testimony concerning the out-of-court statements of other officers. But those statements were offered for a non-hearsay, non-testimonial purpose. Withholding objection was not deficient performance. *See Flood v. Phillips*, 90 F. App'x. 108, 119 (6th Cir. 2004).

The petitioner next claims that counsel was ineffective by failing to object to the trial court's refusal to allow defense investigator J.R. Taylor to refresh his memory with his notes. As noted below, however, Taylor was permitted to refresh his memory with his notes. There was no deficient performance.

The petitioner also argues that counsel was ineffective in handling the questioning of the petitioner's wife Rayven Bryant concerning the source of the $3,600 the police recovered from the petitioner. The petitioner contends that counsel did not know how to respond to an objection made by the prosecutor concerning questions about the source of the petitioner's income and as a result, was unable to offer evidence to rebut the allegation that the money was drug proceeds. But the record shows that the prosecutor objected to defense counsel's question because it was a leading question. Counsel rephrased his question and was able to elicit testimony from Ms. Bryant that the petitioner did "not use narcotics to earn money." The petitioner's factual record does not support the basis of this claim; it is without merit.

3.

In his ninth claim, the petitioner contends that trial counsel was ineffective when he advised the petitioner to plead guilty to the felon in possession of a firearm charge and one of the felony-firearm charges instead of asking for a bench trial from the judge separate from the jury trial. The Michigan Court of Appeals rejected the petitioner's claim for two reasons:

> First, contrary to defendant's argument, his plea did not further impair his credibility with the trial judge before sentencing, as the trial judge expressed at sentencing that he did not "think the jury got it wrong." What probably hurt defendant more was the fact that the court knew that defendant had previously been convicted of two drug-related offenses, and it had heard defendant testify that he would not sell heroin because of his sister's addiction, all the while knowing that defendant had twice sold heroin to an undercover police officer within 48 hours of the search.

> Second, even if defense counsel's recommendation for defendant to plead guilty fell below an objectively reasonable standard, it was not outcome-determinative error. Insisting on a bench trial would not have changed defendant's trial or appellate rights in any significant way.

*Bryant*, 2014 WL 4214849, at * 4-5.

To satisfy the prejudice requirement for an ineffective assistance of counsel claim in the guilty plea context, the defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, but would have insisted on going to trial. *Premo v. Moore,* 562 U.S. 115, 129 (2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to analyze the substance of the habeas petitioner's underlying claim or defense when assessing *Premo*'s requirement. *See Maples v. Stegall*, 340 F.3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he would not have pleaded guilty, because there would have been a reasonable chance that he would have been acquitted had he insisted on going to trial. *See Garrison v. Elo*, 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove such a claim. *Ibid.*

The petitioner has not made that showing here. He has not identified any defense to these charges, nor has he shown that he was otherwise prejudiced by counsel's advice. The petitioner is not entitled to relief on his ninth claim.

### C.

The petitioner's third and fourth claims raise issues of prosecutorial misconduct. "Claims of prosecutorial misconduct are reviewed deferentially" in a habeas case. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). When the issue is the prosecutor's remarks, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168

(1986).  *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam).  In *Darden*, the Supreme Court

stated:

> [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned."  *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)].  The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id.*, at 642.

*Darden*, 477 U.S. at 181.

The petitioner argues that the prosecutor committed misconduct by referring during jury

selection to the Casey Anthony trial, a highly publicized and controversial case in which Ms.

Anthony was acquitted by a jury in Florida of murdering her daughter.  The prosecutor remarked

that the Casey Anthony jurors had been interviewed after Anthony was acquitted of the murder

"and they said they wanted to know [the defendant's] motive."  Defense counsel's objection was

overruled.  The prosecutor continued:

> [I]t doesn't have to be motive, it could be anything else that you might think, this Court will be the only source of elements for crimes in this case.  Does everybody agree with that?  So no matter what your prior concepts of intent, possession of a firearm, possession of narcotics might have been, all the [sic] matters which [sic] Judge Bowman tells you today, or whenever you guys get this case, you all agree with that?  Okay.  So do you all here today promise not to add any other elements?

The Michigan Court of Appeals rejected the petitioner's claim, writing:

> Assuming the prosecution's mention of the Casey Anthony trial during *voir dire* was improper, it did not deny defendant a fair and impartial trial.  First, the prosecutor mentioned the Anthony case only one time, at the beginning of the proceedings.  Despite the trial court's ruling in the prosecutor's favor, he did not mention the Anthony case again.  This single mention, by itself, could not have had such an influence on the jury that it compromised the fairness and impartiality of defendant's trial.

Second, defense counsel, acting in the best interests of his client, presumably would have removed any juror that he believed was prejudiced by the prosecutor's statement. Defense counsel was aware of the potential bias because he objected to the statement, and he took the opportunity to question the jury on the topic to ensure that none of the jurors would consider the Anthony case.

Finally, the trial court instructed the jury that it was only to consider properly admitted evidence and that the lawyers' statements during trial were not evidence. Courts presume that jurors follow their instructions. Therefore, the jury should not have considered any potentially improper statements by the prosecutor.

*Bryant*, 2014 WL 4214849, at * 5-6 (citation omitted).

Although the reference to a sensational case was unfortunate, the prosecutor's remarks in essence simply explained to the jurors that they were to follow the law as given to them by the judge and not add additional elements of proof to the charges. The court of appeals's determination that no prejudice resulted reasonably applied federal law. *See*, *e.g.*, *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (holding that the prosecutor did not inappropriately appeal to sympathy, but merely impressed jurors with the importance of their task, when he mentioned during jury selection that prospective jurors would want a fair jury if a friend or relative were charged with felony murder, and they would equally want a fair jury if a friend or relative were the victim of felony murder). The prosecutor's isolated reference to the Casey Anthony case did not imply that the petitioner was like Ms. Anthony. *Compare Farmer v. Hofbauer*, 1 F. App'x. 372, 381 (6th Cir. 2001) (finding that a single reference comparing the petitioner to Hitler did not merit habeas relief). Finally, the judge several times advised the jurors that the prosecutor had the burden of proving the petitioner's guilt beyond a reasonable doubt and the petitioner did not have to prove his innocence. Any possible prejudice that might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002).

The state courts' determination that the prosecutor's remarks did not deprive the petitioner of a fair trial was a reasonable application of federal law.

Tthe petitioner also contends that the prosecutor committed misconduct during closing argument by arguing that in order to acquit the petitioner, the jurors would "need to affirmatively decide that the two officers are lying." The petitioner claims that this comment improperly shifted the burden of proof to the petitioner.

The Michigan Court of Appeals rejected the petitioner's claim because it determined that the statement was fair commentary on the evidence and the petitioner's theory of the case:

> In context, it appears that the prosecutor's comment that the jury needed to affirmatively decide that two testifying officers were lying was meant to comment on the validity of defendant's alternative version of events. Defendant testified that he happened to be outside on apartment 15's balcony smoking a cigarette when the officers entered apartment 13. According to defendant, the men that were in apartment 13 ran to the balcony, threw the gun and heroin over the edge, and escaped detection by running to a wooded area. The prosecution was permissibly commenting on the unlikelihood of defendant's version of events.
>
> Additionally, twice during his closing argument the prosecutor stated that he had the burden to prove defendant's guilt beyond a reasonable doubt. Similarly, in defendant's closing argument, defense counsel reminded the jury that it was the prosecutor's burden to prove defendant's guilt beyond a reasonable doubt.
>
> Finally, although defendant discounts the trial court's authority, the trial court repeatedly instructed the jurors that they were to presume that defendant was innocent until they were satisfied, beyond a reasonable doubt, of defendant's guilt on each element of the offenses. The trial court further instructed the jury that defendant was not required to prove his innocence. Therefore, the trial court cured any error through its instructions.

*Bryant*, 2014 WL 4214849, at *6 (footnote omitted).

The prosecutor's remarks were a fair response to the petitioner's testimony and defense. The prosecution's isolated comment did not deprive the petitioner of a fair trial, because any possible prejudice from the comment was cured by the trial court's instructions regarding the

proper burden of proof.  *Scott*, 302 F.3d at 603-04.  The petitioner is not entitled to habeas relief on his third and fourth claims.

D.

The petitioner argues in his fifth claim that he was denied the right to present a defense because the judge did not allow his investigator to consult his notes to refresh his memory while testifying, even though several prosecution witnesses were allowed to do so.  As noted above, the record does not support that argument.  The Michigan Court of Appeals found that "the trial court did allow defendant's expert to refresh his memory with his notes on direct examination."  *Bryant*, 2014 WL 4214849, at * 6, n.9.

It is beyond dispute that a criminal accused has the right to present his own witnesses to establish a defense.  *Washington v. Texas*, 388 U.S. 14, 19 (1967); s*ee also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[W]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (citations omitted).  As the state court found, however, that right was not abridged here.

Private investigator J.R. Taylor testified for the defense on the second day of trial.  At the beginning of Taylor's testimony, the prosecutor noted for the record that Taylor had something in his hands and objected to Mr. Taylor referring to it unless he was refreshing his memory, and then only if a proper foundation were laid.  The trial court agreed.  Defense counsel then asked, "Mr. Taylor, you're not reading from any documents in your lap?"  Taylor replied, "No, I'm not."  Taylor did not initially seek to refresh his recollection from his notes.  But when defense counsel asked Taylor if he could remember the height of the balcony rails, Taylor said that he did not.

Defense counsel asked him if his notes might help him refresh his memory, to which Taylor replied, "Probably." Although the prosecutor said, "Your Honor—", there is no indication that the prosecutor objected. The trial judge did not interrupt the line of questioning and defense counsel instructed Taylor to review his notes. While Taylor consulted his notes, neither the prosecutor nor the trial court said anything. After refreshing his memory, Taylor testified to the height of the railings.

On redirect examination, defense counsel sought to introduce a photograph of the petitioner on the balcony. The prosecutor objected because the photograph had not been provided to the prosecution, and the court sustained the objection. Defense counsel then asked whether Taylor needed to look at any notes or photographs to refresh his recollection, even though defense counsel had not questioned the witness. The prosecutor objected, and the trial court sustained the objection. Defense counsel then asked Taylor if he remembered the exact height of the railing and Taylor testified he did not. The prosecutor objected on the basis that the question had been asked and answered, not to Taylor's referencing his notes. The judge sustained the objection on the ground that the question had been asked and answered.

The petitioner's right to present a defense was not violated because Taylor was permitted to refresh his memory with his notes. It is true that the trial judge prevented Taylor from consulting his notes a second time, but that was because he had already been asked the question about the balcony. Barring repetitive questions does not violate a defendant's right to present a defense. *See United States v. Blackwell*, 459 F.3d 739, 756 (6th Cir. 2006). The petitioner is not entitled to relief on his fifth claim.

E.

Next, the petitioner contends that his Sixth Amendment right to a speedy trial was abridged, because he was arrested on October 29, 2009 but not brought to trial until July 2011. The charges were dismissed by the trial court on September 9, 2010 because the prosecutor was unable to proceed to trial. The petitioner was not re-charged until November 3, 2010. The petitioner's trial began on July 28, 2011.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI. To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The court must weigh these factors in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. 407 U.S. at 533. Although the Michigan Court of Appeals relied on state law, it weighed each of these factors and found no speedy trial violation, ultimately concluding that the prosecutor overcame the presumption of prejudice that the court applied. That decision was not "so lacking in justification" as to put it "beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103.

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. Therefore, to trigger a speedy trial concern, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States*, 505 U.S. 647, 651-52

(1992).  Courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial."  *Id.* at 652, n.1; *United States v. Brown*, 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000).

The court of appeals determined that the delay was 19 months, even accounting for the hiatus between dismissal of the original complaint and the re-charge.  Although that court believed that an 18-month delay was necessary to trigger the presumption, the court held that "the prosecution had the burden to show that defendant was not prejudiced by the delay."  *Bryant*, 2014 WL 4214849, at *7.

The court also found that the reasons for the delay should be ascribed to both parties, but more to the prosecution.  *Ibid.*  However, there is no evidence on the record that any part of this delay was caused intentionally by the trial court or the prosecution.  *See Norris v. v. Schotten*, 146 F. 3d at 327-28; *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005).  Nor is there any record evidence to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler*, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), or that the prosecution intentionally delayed the trial to gain a tactical advantage over the petitioner, s*ee United States v. Brown*, 498 F. 3d 523, 531 (6th Cir. 2007).

The court of appeals acknowledged that the petitioner asserted his right to a speedy trial in a motion filed about eight months before the trial actually started.  *Bryant*, 2014 WL 4214849, at *8.  But it concluded that prejudice to the petitioner did not tip the balance toward a violation of his speedy trial right.  *Ibid.*

That ultimate finding did not unreasonably apply *Barker* or other Supreme Court jurisprudence. Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. *See Trigg v. State of Tenn.,* 507 F. 3d 949, 954 (6th Cir. 1975). The petitioner argues that Louella Jackson, who was the manager of the apartment building, died during the delay. The petitioner asserts that Ms. Jackson would have testified that the petitioner was not the occupant of apartment 13 and could have provided the name of the actual occupant. But he has offered no evidence beyond his own assertions what Ms. Jackson's proposed testimony would be, nor has he even indicated when she died. And considering the significant evidence against the petitioner in this case, it is not readily apparent how the state court's determination that the absence of Ms. Jackson did not prejudice his case unreasonably applied federal law. *See United States v. Sylvester*, 330 F. App'x. 545, 549–50 (6th Cir. 2009).

As a related claim, the petitioner contends that the trial court erred in refusing to adjourn the trial to permit his counsel to find other witnesses from the apartment complex to testify that the petitioner did not reside in apartment 13.

In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004). To obtain habeas relief, a habeas petitioner must show that the denial of his request for a continuance resulted in actual prejudice to his defense. *Id.*; *see also Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time

would have made relevant witnesses available or otherwise benefitted the defense. *Powell*, 332 F.3d at 396.

The petitioner has not shown that the trial judge's denial of a continuance deprived him of a fundamentally fair trial because he did not state with any specificity the content of any of the proposed witnesses' testimony, nor has he established that their testimony would have been favorable to the defense. The petitioner is not entitled to relief on his claim. *Mackey v. Dutton*, 217 F.3d 399, 410 (6th Cir. 2000).

F.

In his seventh claim, the petitioner alleges that right to confront witnesses was violated when Detective Ferguson testified that other officers told him that they saw the petitioner throw drugs and guns off the balcony.

The Michigan Court of Appeals rejected this argument, reasoning that the police officer's testimony "that the two eyewitnesses said they saw defendant throw the gun and drugs from the balcony was not hearsay, as the prosecutor offered Detective Ferguson's testimony to explain why he did not send the gun to the laboratory for fingerprinting. As a result, the prosecution did not offer the statement for the purpose of establishing the truth of the matter asserted." *Bryant*, 2014 WL 4214849, at * 9 (internal footnote omitted).

It is true that the Confrontation Clause of the Sixth Amendment, which is applicable to the States through the Fourteenth Amendment, *Idaho v. Wright*, 497 U.S. 805, 813 (1990), guarantees defendants in criminal prosecutions "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Clause prohibits the admission of hearsay statements without providing the accused the right to cross-examine the person making the statement. *Crawford v.*

*Washington*, 541 U.S. 36, 68 (2004). However, statements offered for some purpose other than to prove the truth of the matter asserted would not implicate the Confrontation Clause. *See Michigan v. Bryant*, 562 U.S. 344, 369 (2011); *United States v. King*, 865 F.3d 848, 850 (6th Cir. 2017). Even in *Crawford*, the Supreme Court acknowledged that testimonial statements could be used for purposes other than establishing the truth of the matter asserted. *See* 541 U.S. at 60 n.9. Accordingly, reasonable jurists could not debate the state courts' conclusion that the Confrontation Clause was not violated. The Michigan Court of Appeals's decision was not contrary to or an unreasonable application of Supreme Court law.

The petitioner is not entitled to relief on his seventh claim.

### III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: February 12, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on February 12, 2019.

s/Kristen C. MacKay
KRISTEN C. MACKAY